STONE-HOOD AWNING COMPANY, Plaintiff, *v.* GEORGE ZIPP, Defendant.

Supreme Court, Erie County, March, 1924.

**Vendor and purchaser — boundaries — description of premises in contract of sale controls over conflicting description in blue print made part of contract by reference.**

Where premises in a contract of sale are described as " being the northerly fifty (50) feet measuring parallel with the northerly line of premises described " in a deed, meaning that the northerly part of the premises is to be ascertained by running a line parallel to the northerly boundary fifty feet therefrom, such description must prevail over a blue print which is made a part of the contract by reference and which shows such parallel line to be only forty-two feet from the northerly boundary.

ACTION for specific performance of contract to sell real estate.

*Thomas R. Stone,* for plaintiff.

*Richard W. Werner* and *Wortley B. Paul,* for defendant.

BROWN, J.   Defendant, on November 9, 1922, agreed in writing to sell and convey to the plaintiff certain real estate " briefly described as follows: Being the northerly fifty (50) feet measuring parallel with the northerly line of premises described in deed recorded in the Erie County Clerk's Office, Liber 1595 at page

598, which deed conveys about 423 feet to the party of the first part (defendant). For reference to the location of the premises herein conveyed as situate on the west side of Main Street, Buffalo, N. Y., north of Harvard Place and south of Lafayette Avenue, see blue print of survey made by Frederick Wing attached herewith." The blue print referred to in the contract was not attached to the contract; it was delivered to the plaintiff, together with an abstract of the title, some weeks after the execution and delivery of the contract. The blue print shows the tract of land described in deed recorded in liber 1595, referred to in the contract, owned by the defendant on the west side of Main street, having a frontage on that street of four hundred and twenty-three feet and three hundred and forty-five feet long on a north and south line, with its northerly line or boundary meeting the west bounds of Main street at an angle of fifty-nine degrees twenty-nine minutes. The blue print is made upon a scale of one inch to twenty feet. Upon the blue print appears a line parallel to the northerly line of the premises shown thereon, with the figures " 50 feet " at right angles with the north and south lines of the lot and about two inches west of the Main street end of the lot. This parallel line is two and one-eighth inches distant from the northerly line and indicates a plot of land forty-two feet wide, except that on its east end fronting on Main street measuring along the street front it is two and one-half inches on the blue print, indicating a width on the ground of fifty feet. A lot with its northerly line coincident with the northerly line of defendant's premises, and having its southerly line fifty feet south of the northerly line, will measure on its east or Main street front end fifty-eight feet. The plaintiff contends that it is entitled to a conveyance of the northerly fifty feet of defendant's premises to be determined by measuring its north and south lines fifty feet apart, while the defendant contends that he is only required to convey a lot fifty feet wide, measuring upon the Main street frontage. Upon the plaintiff's contention it is entitled to a deed of a lot fifty feet wide between its north and south lines, which will be fifty-eight feet front on Main street; upon the defendant's contention the plaintiff is only entitled to the northerly forty-two feet of the premises, for the reason that a lot with forty-two feet between its north and south lines has fifty feet frontage on Main street. The only evidence from which the intention of the parties can be ascertained is the contract and the blue print. The contract description, " Being the northerly fifty (50) feet, measuring parallel with the northerly line of premises described " in defendant's deed, means a strip of land fifty feet wide across the entire north end of defendant's premises. The

northerly fifty feet of defendant's premises to be measured by a line parallel to the north side could only be ascertained by fixing fifty feet as the distance between the parallel lines.  " The northerly fifty feet measuring parallel with the northerly line," means that the southerly line can only be ascertained by measuring it parallel to and fifty feet distant from the northerly line.  Such language cannot be tortured into any authority for measuring only forty-two feet between the parallel lines.  The contract does not read: " Being the northerly forty-two feet measuring parallel with the northerly line of " defendant's premises.  This clause cannot be given such construction.

An analysis of the blue print reference clause compels a different conclusion.  The clause is: " For reference to the location of the premises herein conveyed as situate on the west side of Main street   *   *   *   see blue print   *   *   *   attached herewith." Upon examination of the blue print for the purpose of locating, fixing and ascertaining the boundary of the contracted premises as they are situated upon the west side of Main street, it is plainly apparent that the contracted premises were to consist of a frontage on Main street of only fifty feet.  All of the figures and lines, computations and measurements by use of the scale thereon, demonstrate that the northerly fifty feet of the defendant's premises pictured on the blue print consist of only such lands as are contained between parallel lines fifty feet apart measured along the west bounds of Main street.  The blue print shows defendant's premises have a frontage on Main street of four hundred and twenty-three feet, explaining the figures and in the contract language " which deed conveys about 423 feet to the party of the first part," defendant.  Upon the blue print the defendant's premises are apparently subdivided into four parcels with their several widths indicated in figures placed about or near the center of each subdivision.  It will not do to say that such figures so placed indicate the width of such lots at right angles to their north boundaries; the figures totalize 422.89, a variation of only eleven-one-hundredths of a foot, about one inch from four hundred and twenty-three feet, the Main street frontage of the entire tract.  At right angles to the north boundary defendant's premises scale three hundred and forty-five feet, demonstrating that the figures upon the blue print indicating the width of these four subdivisions do not refer to their right angle width, but do refer only to their Main street frontage.  Such fact establishes that the figures " 50 feet " upon the northerly of the subdivisions locating the contracted premises, fix, ascertain and measure the same upon the blue print to have a Main street frontage of only fifty feet.  The Main street frontage

of the contracted premises as pictured upon the blue print is two and one-half inches long; twenty feet to the inch the blue print scale shows a Main street frontage of fifty feet. It is thus seen that the blue print reference clause in the contract necessarily compelling an examination of the blue print leads to a conclusion in conflict with the result reached from the examination of the description of the premises set forth in the contract. The description of the premises in the contract conflicts with the plotted premises on the blue print. The blue print is made a part of the contract by reference. The description used plainly means the northerly part of defendant's premises to be ascertained by running a line parallel to the northerly boundary fifty feet therefrom. Such description must prevail over the blue print plot showing such para'lel line to be on y forty-two feet from the northern boundary.

Sir Francis Bacon said in 1597: '' There be three degrees of certainty,— presence; name; and demonstration or reference: whereof the presence, the law holdeth of greatest dignity; the name, in the second degree; and the demonstration or reference, in the lowest; and always error or falsity in the less worthy shall not control nor frustrate sufficient certainty and verity in the more worthy.'' Wigm. Ev. 3512.

The rule is that where there are two descriptions in a deed, the one, as it were, superadded to the other, and one description being complete and sufficient of itself, and the other, which is subordinate and superadded, is incorrect, the incorrect description, or feature or circumstance of the description, is rejected as surplusage, and the correct description is allowed to stand alone. Wigm. Ev. 3513.

It is elementary that if there be two clauses in a deed so totally repugnant to each other that they cannot stand together, the first shall be received and the latter rejected. Shep. Touch. 88. That which is most material and most certain in a description shall control that which is less material and less certain. *Hathaway* v. *Power*, 6 Hill, 453; *Clark* v. *Durland*, 35 App. Div. 312; *Green* v. *Horn*, 142 id. 90.

The first clause of the description defining the contracted premises to be fifty feet wide extending across the whole northerly end of the defendant's premises, which is the material and certain piece of land to be conveyed, must control.

The plaintiff is entitled to judgment.

Judgment accordingly.